**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DUEWARD W. CRANFORD, II, *et al.*,<br><br>             Plaintiffs,<br><br>        v.<br><br>U.S. DEPARTMENT OF INTERIOR, e*t al.*,<br><br>             Defendants. | Civil Action No. 25-1116 (EGS) |

<u>**MEMORANDUM OPINION**</u>

Dueward W. Cranford, II; Jon Colburn; William Braun; and the Citizens for Equal Rights Alliance ("CERA") (collectively "Plaintiffs") sue the U.S. Department of the Interior ("Interior"); U.S. Bureau of Indian Affairs; the National Indian Gaming Commission; the U.S. Department of Justice; Dough Burgum, Secretary of the Interior; William Doffermyre, Solicitor, U.S. Department of the Interior, Office of the Solicitor; Eric Shepard, Associate Solicitor, Indian Affairs, U.S. Department of the Interior; Bryan Mercier, Director, U.S. Bureau of Indian Affairs, Office of the Solicitor; Ryan Hunter, Acting Regional Director, Pacific Southwest Regional Office, U.S. Bureau of Indian Affairs, and Head of the California Fee to Trust

1

Consortium; Pamela Bondi, U.S. Attorney General; Adam R.F. Gustafson, Acting Attorney General, U.S. Department of Justice Environment and Natural Resources Division; Gina Allery, Director, Office of Tribal Justice, U.S. Department of Justice; and the Acting Director, Tribal Resources Section, U.S. Department of Justice, Environment and Natural Resources Division (collectively, "Defendants").[1] *See* Compl., ECF No. 1.[2] Plaintiffs sue the individual Defendants in both their official and individual capacities. *See id.* Plaintiffs state the following claims for relief: (1) violations of the Federal Recognition Tribal List Act, *see id.* at 34; (2) the Ione Band is not eligible under the Indian Reorganization Act and/or the Indian Consolidation Act to acquire land; (3) violations of the "property/territory" clause of the U.S. Constitution and the Tenth Amendment, *see id.* at 55; and (4) Conspiracy under 42 U.S.C. § 1985, *see id.* at 67.

Pending before the Court is Plaintiffs' Motion for Preliminary Injunction in which Plaintiffs seek, among other

---

[1] William Doffermyre was confirmed as the Solicitor of the Department of the Interior on September 18, 2025. Pursuant to Federal Rule of Civil Procedure ("Rule") 25(d), he is automatically substituted for Acting Solicitor Gregory Zerzan. Acting Regional Director Ryan Hunter is substituted for his predecessor, Amy Dutschke pursuant to Rule 25(d).
[2] When citing electronic filings throughout this opinion, the Court cites to the ECF header page number, not the original page number of the filed document.

things, to halt further construction of the Ione Band of Miwok Indian's ("Ione Band") Acorn Ridge Indian Gambling Casino located in Plymouth City, Amador County, California. *See* Mot. for Prelim. Inj., ECF No. 17; and Mem. of Law in Support (collectively "MPI"), ECF No. 17-1. The groundbreaking for the casino occurred in October 2024 and it is scheduled to open in February 2026. Upon careful consideration of Plaintiffs' motion, the Defendants' oppositions, the reply, surreply, and sursurreply thereto; the applicable law; and for the reasons discussed below, the Court **DENIES** Plaintiffs' motion.

## I.    Background

### A.  Factual

#### 1.    Prior Litigation

The casino at issue in this case has been the subject of two prior lawsuits in federal court in California. First, in 2015, the County of Amador challenged, pursuant to the Administrative Procedure Act, the 2012 Record of Decision ("ROD") issued by Interior that lead to the construction of the casino. *See County of Amador, California v. Dep't of the Interior*, 136 F. Supp. 3d 1193 (E.D. Cal. 2015). The U.S. Court of Appeals for the Ninth Circuit ("Ninth Circuit") affirmed the District Court's grant of summary judgment to the Defendants in the case. *See County of Amador, California v. Dep't of the Interior*, 872 F.3d 1012, 1015 (9th Cir. 2017).

The County challenged two of Interior's determinations in the ROD. It first challenged "Interior['s] determin[ation] that the Ione Band qualifies to have land taken into trust for its benefit under the [Indian Reorganization Act 'IRA'] because the Band is now 'recognized' and was 'under Federal jurisdiction' in 1934 when the IRA took effect." *Id.* at 1020. In response to this challenge, the court held "that a tribe qualifies to have land taken into trust for its benefit under § 5108 if it (1) *was* 'under Federal jurisdiction' as of June 18, 1934, and (2) *is* 'recognized' at the time the decision is made to take land into trust." *Id.* at 1024.

The County also challenged "Interior['s] determin[ation] that the Ione Band may conduct gaming on the Plymouth Parcels under the 'restored lands of a restored tribe' provision of [the Indian Gaming Regulatory Act 'IGRA']." *Id.* at 1020. In response to this challenge, the court held "that Interior did not err in allowing the [Ione] Band to conduct gaming operations on the Plymouth Parcels under the 'restored tribe' exception of IGRA." *Id.* at 1031.

On October 1, 2018, the Supreme Court denied the petition for the writ of certiorari. *See County of Amador, California v. Dep't of the Interior*, 139 S. Ct. 64 (2018) (mem).

The second lawsuit was filed in 2018 by three of the Plaintiffs in this case—Dueward W. Cranford, II; Jon Colburn;

William Braun; three other individuals—Dr. Elida Malick, David Logan, and Catherine Coulter; and No Casino in Plymouth, a "representative citizens group and a non-profit corporation." Compl. in Civil Action No. 18-1398, District Court for the Eastern District of California, Ex. 1 to Gov't Defs.' Opp'n for Prelim. Inj. Relief ("Opp'n"), ECF No. 32-1 at 1, 9.

The District Court noted that the lawsuit primarily challenged the same Interior decisions that the courts had considered in the Amador County case. *See No Casino in Plymouth v. Nat'l Indian Gaming Comm'n*, Civ. A. No. 18-1398, 2022 WL 1489498, at *1 (E.D. Cal. May 11, 2022) ("*Plymouth I*").

> Plaintiffs' claims challenge various determinations as follows: (1) the Tribe's gaming ordinance (*id.* at ¶ 107); (2) [then-Acting Assistant Secretary of Indian Affairs Donald] Laverdure's authority to approve the ROD under the Appointment Clause of the U.S. Constitution (*id.* at ¶ 118); (3) the Tribe's federally recognized status under the Indian Reorganization Act ("IRA") (*id.* at ¶ 127); (4) the Tribe's federal recognition under 25 C.F.R. Part 83 (*id.* at ¶ 136); (5) Defendants' violation of Plaintiffs' Equal Protection rights by favoring the Tribe, a race-based group, through approval of the ROD and gaming ordinance (*id.* at ¶¶ 141-43); and (6) Defendants' violation of federalism protections (*id.* at ¶ 150-51).

*Id*. at *2. The District Court first ruled that *County of Amador* disposed of Claims One through Four pursuant to the "law of the circuit doctrine." *Id*. at *4. It then ruled that Plaintiffs had conceded the two remaining claims by not meaningfully responding

to them, but that even if they had, it found Defendants'
arguments on the merits persuasive. *Id.* The Ninth Circuit
affirmed the District Court's grant of judgment on the pleadings
to the Defendants. *See No Casino in Plymouth v. Nat'l Indian
Gaming Comm'n*, Civ. A. No. 22-15756, 2023 WL 4646113, at *1 (9th
Cir. 2023) ("*Plymouth II*").

On April 15, 2024, the Supreme Court denied the petition
for the writ of certiorari. *See No Casino in Plymouth v. Nat'l
Indian Gaming Comm'n*, 144 S. Ct. 1347 (2024) (mem).

### 2. The Instant Litigation

Pursuant to Interior's 2012 ROD, twelve parcels of land
were accepted into federal trust on behalf of the Ione Band for
gaming purposes. Compl., ECF No. 1 ¶ 2. First, on March 20,
2020, ten parcels of land were accepted into federal trust on
behalf of the Ione Band. *Id.* ¶ 113. Then, on October 17, 2024,
two parcels of land were accepted into federal trust on behalf
of the Ione Band. *Id.* ¶ 133. Plaintiffs allege that the
acceptances of these parcels were unconstitutional. *Id.* ¶ 2.

Plaintiffs also allege that the "inclusion, on November 2,
1994, by the U.S. Department of the Interior and Bureau of
Indian Affairs, of the Ione Band of Miwok Indians in the list of
Indian Entities Recognized by and Eligible to Receive Services
from the United States Bureau of Indian Affairs under the

Federally Recognized Indian Tribe List Act" was

unconstitutional. *Id*. ¶ 1.

The relief Plaintiffs seek is that the Court:

> RESTRAIN[] AND ENJOIN[] Federal and Individual
> Defendants, their agents, servants,
> employees, attorneys and all others in active
> concert or participation with Defendants, from
> continuing the federal conspiracy entailing
> their racial discrimination against
> Plaintiffs on behalf of the Ione Band of Miwok
> Indians pursuant to the fraudulent Federal-
> Indian trust relationship, and thus, from
> continuing to recognize and/or reaffirm the
> acceptance into federal trust of the twelve
> (12) California fee simple land parcels
> identified in Doc. No. 1-6 and Doc. 1-10 of
> the record, which fee-to-trust transfers the
> Court preliminarily finds violate the
> Constitution's structural protections and
> Plaintiffs' foundational constitutional
> rights and liberty interests.
> . . .
> RESTRAIN[] AND ENJOIN[] Federal and Individual
> Defendants, their agents, servants,
> employees, attorneys and all others in active
> concert or participation with Defendants from
> continuing to support, directly or indirectly,
> the Ione Band of Miwok Indians' gambling
> casino construction and finance-related
> activities made possible by these
> unconstitutional racially discriminatory
> federal actions.

Proposed Order, ECF No. 17-10.

**B. Procedural[3]**

Plaintiffs filed their Complaint on April 14, 2025, *see*

Compl., ECF No. 1; and Defendants' response was initially due by

---

[3] This section describes the procedural background most relevant
to the pending motion.

June 16, 2025, *see* Dkt. Entry (Apr. 23, 2025). The Court granted, over Plaintiffs' objection, two motions by Defendants for extensions of time to respond to the Complaint. *See* Minute Order (July 7, 2025); Minute Order (Aug. 26, 2025). Defendants stated that additional time was needed to determine whether the Department of Justice would represent the Defendants sued in their individual capacities. *See* Mot. to Extend Time, ECF No. 11; Mot. to Extend Time, ECF No. 14. Accordingly, Defendants' response to the Complaint was due by October 14, 2025.

On September 15, 2025, Plaintiffs filed the Motion for Preliminary Injunction. *See* MPI, ECF No. 17. Thereafter, the Court entered its standard Minute Order in response to a motion for preliminary injunction requesting a joint status report regarding: (1) whether Plaintiffs' Motion for Preliminary Injunction should be consolidated with the merits under Federal Rule of Civil Procedure 65; and (2) recommendations for further proceedings including, if necessary, a briefing schedule for plaintiffs' Motion for Preliminary Injunction. *See* Minute Order (Sept. 16, 2025).

The parties were unable to reach an agreement on the schedule, and the Court entered a scheduling order adopting Plaintiffs' proposed scheduling order pursuant to which, among other things, Defendants' opposition to the Motion for Preliminary Injunction was due by October 31, 2025 and

8

Plaintiffs' reply due by November 30, 2025. *See* Minute Order
(Dec. 12, 2025). Pursuant to the date Plaintiffs' Motion for
Preliminary Injunction was filed, the Local Rules of the Court
required the Court to have either held a hearing by October 6,
2025, or made a finding that a later hearing date would not
prejudice the parties. *See* LCivR 65.1(d). The Court made that
finding in view of its adoption of Plaintiffs' proposed schedule
under which they sought to first brief their Motion for Limited
Expedited Discovery, and under which their Reply in Support of
their Motion for Preliminary Injunction was due by November 30,
2025, nearly two months after the hearing date pursuant to the
local rule. *See* JSR, ECF No. 18 at 5. On September 30, 2025,
Plaintiffs' sought clarification and reconsideration of the
Court's scheduling order, requesting, among other things, an
October 8, 2025 hearing and "immediate" injunctive relief. *See*
Mot. to Clarify, ECF No. 19. The Court granted in part and
denied in part Plaintiffs' motion and set an expedited briefing
schedule. *See* Minute Order (Dec. 12, 2025).

Between October 1, 2025, and November 11, 2025, civil cases
involving the United States were stayed due to the lapse in
appropriations. *See* Standing Order No. 25-55 (JEB) (Oct. 1,
2025); Standing Order No. 25-59 (JEB) (Nov. 13, 2025).

On December 10, 2025, Plaintiffs filed an Ex Parte Motion
for Temporary Restraining Order ("TRO"). *See* TRO, ECF No. 26.

The Court denied the motion on December 12, 2025, *see* Mem. Op. and Order, ECF No. 28; and set a new scheduling order, *see* Minute Order (Dec. 12, 2025). On December 23, 2025, Plaintiffs sought reconsideration of the Court's denial of their Ex Parte Motion for TRO. *See* Mot. to Reconsider, ECF No. 29. Following expedited briefing on that motion, the Court denied the motion. *See* Minute Order (Jan. 9, 2026). Because Plaintiffs asserted in their motion for reconsideration that they have "new and updated information" relevant to their Motion for Preliminary Injunction, the Court updated the briefing schedule to permit them the opportunity to include that information in their reply and set a schedule for a surreply and sursurreply to ensure full briefing on the issue. *Id.*

## II.  Standard of Review

"A preliminary injunction is an extraordinary remedy never awarded as of right," and only "upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22, 24 (2008). The moving party "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. Where the federal government is the opposing party, the balance of equities and public interest factors merge. *See Nken v. Holder*,

10

556 U.S. 418, 435 (2009). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).

In this Circuit, the four factors have typically been evaluated on a "sliding scale," such that if "the movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor." *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1291–92 (D.C. Cir. 2009). In the wake of the Supreme Court's decision in *Winter,* 555 U.S. at 7, "the D.C. Circuit has suggested that a positive showing on all four preliminary injunction factors may be required." *Holmes v. FEC*, 71 F. Supp. 3d 178, 183 n.4 (D.D.C. 2014); *see also Sherley v. Sebelius,* 644 F.3d 388, 393 (D.C. Cir. 2011) ("[W]e read Winter at least to suggest if not to hold that a likelihood of success is an independent, freestanding requirement for a preliminary injunction.") (quotation marks omitted). Nonetheless, "the Circuit has had no occasion to decide this question because it has not yet encountered a post-*Winter* case where a preliminary injunction motion survived the less rigorous sliding-scale analysis." *ConverDyn v. Moniz*, 68 F. Supp. 3d 34, 46 n.2 (D.D.C. 2014); *see also Changji Esquel Textile Co. v. Raimondo*, 40 F.4th 716, 726 (D.C. Cir. 2022) ("In the past, we have . . . reserved

11

the question whether the sliding-scale approach remains valid. We follow the same approach here because, even under the sliding-scale approach, the movant must raise at least a serious legal question on the merits.")(quotations and internal citations omitted); *cf. Hanson v. Dist. of Columbia*, 120 F.4th 223, 243 (D.C. Cir. 2024) (citations omitted).

Here, there is no reason for the Court to consider whether Plaintiffs prevail under either approach because no factor weighs in favor of the Plaintiffs.

## III. Analysis

### A. Plaintiffs Fail to Show Irreparable Harm

"[T]he basis of injunctive relief in the federal courts has always been irreparable harm"; thus "[a] movant's failure to show any irreparable harm is [ ] grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (quoting *Sampson v. Murray*, 415 U.S. 61, 88 (1974)).

The D.C. Circuit "has set a high standard for irreparable injury." *Id.* "First, the injury must be both certain and great; it must be actual and not theoretical." *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)(per curiam). The movant must show that "[t]he injury complained of is of such *imminence* that there is a clear and present need for equitable relief to

12

prevent irreparable harm." *Id.* (citations, brackets, and
internal quotation marks omitted). "Second, the injury must be
beyond remediation." *Chaplaincy of Full Gospel Churches*, 454
F.3d at 297. "The purpose of a preliminary injunction is not to
prevent all harm but 'merely to preserve the relative positions
of the parties until a trial on the merits can be held.'"
*Hanson*, 120 F.4th at 244 (quoting *Starbucks Corp. v. McKinney,*
602 U.S. 339, 346 (2024)).

Plaintiffs argue that they are likely to suffer irreparable
harm if preliminary injunctive relief is not granted based on
the deprivation of their constitutional rights, and because the
casino "will unequivocally and irreversibly disturb that quiet,
peaceful and safe quality of life that Plaintiffs have long
enjoyed and have strenuously fought to preserve." MPI, ECF No.
17-1 at 42. Defendants dispute that Plaintiffs have shown they
will face irreparable harm because: (1) "the Complaint fails to
state any plausible constitutional claim"; (2) "Plaintiffs'
delay in moving for a preliminary injunction rebuts their
assertions of irreparable injury"; and (3) Plaintiffs' fear of
injury is speculative. Opp'n, ECF No. 32 at 33-35. Plaintiffs
fail to respond to Defendants specific arguments regarding
irreparable harm, *see generally* Reply, ECF No. 44; but assert
that because the casino is now expected to open in February 2026
rather than April-May, 2026, there is now "an imminent threat of

actual bodily harm and loss of personal security/safety," *id.* at 44.

The Court concludes that Plaintiffs have failed to demonstrate irreparable injury for the reasons explained below. First, "the deprivation of constitutional rights constitutes irreparable injury only to the extent such deprivation is shown to be likely." *Archdiocese of Wash.*, 897 F.3d at 335. Here, and for the reasons explained below, Plaintiffs are unlikely to succeed on the merits of their constitutional claims because those claims are barred by Sovereign Immunity and the Statute of Limitations. And the mere allegation of a constitutional violation does not entitle Plaintiffs to a presumption of irreparable harm. *Hanson*, 120 F.4th at 244. "Rather, a plaintiff must show why the court will be unable to grant meaningful relief following trial." *Id*.

Plaintiffs have failed to make this showing. They contend that "[u]nless this Court issues a permanent injunction **before** the Ione Band's casino is fully constructed and operational, Plaintiffs will have no remedy available at law or in equity to protect and preserve their foundational liberty interest of participating in and maintaining their republican form of politically accountable local government, their foundational constitutional rights to due process of law and equal protection of the law, and their unique quality of life."

14

MPI, ECF No. 17-1 at 42-43. Plaintiffs fail, however, to explain why this is so. *See id.* at 42-49. Rather, Plaintiffs discuss their disagreement with the Ione Band's plans to address the "federal crimes" they claim accompany tribal casino operations. *See id.* at 45-46. They also believe that the payments the Ione Band and Amador County have agreed to for law enforcement associated with the casino are inadequate. *See id.* at 45. But they fail to provide a legal argument explaining why they "will have no remedy available at law or in equity" following a trial in the case. *Id.* at 42. They therefore have failed to explain why the relief they request will be unavailable later.

Second, Plaintiffs claims of injury are speculative. They claim that without injunctive relief, they "will suffer certain, great and imminent irremediable/irreparable injury as the result of the serious federal crimes of cigarette, felony drug and human trafficking that the well-documented federal government threat assessments have found to inflict tribal casinos throughout the nation, including in California, and which are similarly likely to inflict the Ione Band's Acorn Ridge casino once it is fully constructed and operational." MPI, ECF No. 17-1 at 48-49. To support these claims, they point to the Declaration of Mr. Cranford. However, Mr. Cranford's claims of harm are not supported by the evidence upon which he relies.

Mr. Cranford explains that it is his "understanding" that
Ione Band has understated the magnitude of federal crimes that
will be associated with the casino and that its plans to
mitigate those crimes is inadequate. Declaration of Due W.
Cranford, II ("Cranford Decl."), ECF No. 17-6 ¶ 17. He also
asserts, without support, that the payments the Ione Band and
Amador County have agreed to for law enforcement associated with
the casino are inadequate. *Id*. ¶ 18.

To support his assertion that money laundering can be
expected in connection with the casino, he points to a 2007
National Money Laundering Strategy Report issued by the
Departments of Treasury, Justice, and Homeland Security.
However, the report merely states that "the most notable
development" in casinos is the growth of Native American
casinos, which have "ample potential money laundering and other
types of financial crimes." *See* U.S. Department of the Treasury,
U.S. Department of Justice and U.S. Department of Homeland
Security, 2007 National Money Laundering Strategy (2007) at 58,
https://home.treasury.gov/system/files/246/nmls.pdf. Plaintiffs
point to no evidence indicating that such money laundering has
actually taken place at any tribal casinos.

Mr. Cranford points to three incidents where cigarettes
were confiscated for non-payment of taxes in California, *see*
Cranford Decl., ECF No. 17-6 ¶ 20; however, the Court's review

of Mr. Cranford's sources reveals that none of these incidents were related to casinos.

Relying on National Drug Threat Assessments issued in 2015, 2017, 2019, and 2025, Mr. Cranford states that tribal casinos "have become havens for illicit Mexican cartel-related drug trafficking of high-potency marijuana, methamphetamine, fentanyl, cocaine and heroin." *Id.* ¶ 21. However, only the 2017 threat assessment linked illicit drugs on tribal lands to tribal casinos. *See* U.S. Department of Justice, Drug enforcement Administration, 2017 National Drug Threat Assessment (Oct. 2017) at 139, https://www.dea.gov/sites/default/files/2018-07/DIR-040-17_2017-NDTA.pdf (explaining that "local gaming casinos" were used as venues for delivering and selling methamphetamine).

Mr. Cranford claims that "tribal casinos . . . are vulnerable to human forced labor and sex trafficking." Cranford Decl., ECF No. 17-6 ¶ 22; *see also id.* ¶¶ 23-29. The Court acknowledges, as does the National Indian Gaming Commission, the potential for human trafficking to occur at the casino once it is open. *See generally* U.S. National Indian Gaming Commission, Bulletin No. 2021-2, Subject: Human Trafficking (Feb. 26, 2021), https://www.nigc.gov/wpcontent/uploads/2025/02/Human_Trafficking_Bulletin_2-26-2021_Final.pdf. However, whether human trafficking will occur at the Acorn Ridge Indian Gambling Casino is speculative at this point.

Plaintiffs' claims of harm are not supported by the evidence upon which they rely and therefore are entirely speculative. Plaintiffs point to no new evidence to support their assertion there is "an imminent threat of actual bodily harm and loss of personal security/safety" because the casino is now expected to open in February 2026 rather than April-May, 2026. *See* Reply, ECF No. 44 at 44. Plaintiffs' speculative fear of personal injury does not satisfy the high standard for irreparable injury in this Circuit.

Finally, Plaintiffs' delay in seeking injunctive relief undercuts their claim of irreparable harm. "[A] party requesting a preliminary injunction must generally show reasonable diligence." *Benisek v. Lamone*, 585 U.S. 155, 159 (2018). While "a late filing, on its own, is [not] a permissible basis for denying a preliminary injunction," "untimely filings may support a conclusion that the plaintiff cannot satisfy the irreparable harm prong." *Gordon v. Holder*, 632 F.3d 722, 724-25 (D.C. Cir. 2011).

As stated above, the Supreme Court denied the petition for the writ of certiorari in *No Casino in Plymouth v. Nat'l Indian Gaming Comm'n* on April 15, 2024. *See No Casino in Plymouth,* 144 S. Ct. at 1347. Plaintiffs could therefore expect construction of the casino to commence. As alleged in the Complaint, the parcels of land upon which the casino is being built were

18

accepted into federal trust on behalf of the Ione Band in March
2020 and October 2024. *See* Compl., ECF No. 1 ¶¶ 113, 133.
Exhibits to the Motion for Preliminary Injunction include the
Intergovernmental Agreement between the County of Amador and the
Ione Band dated May 28, 2024, the purpose of which is "to
provide a funding mechanism for the Tribe to compensate the
County for law enforcement services and to address certain
transportation impacts identified in the environmental
documents." *See* ECF No. 17-8 at 4-5. Exhibits also include an
environmental study for the project dated January 24, 2024. ECF
No. 17-9 at 1-444. According to a local area news report, the
groundbreaking for the casino occurred in October 2024. Jackson
Ellison, *A Tribal Casino Breaks Ground, After Decades in the
Making*, ABC10, (Oct. 24, 2024),
https://www.abc10.com/article/money/business/amador-county-
casino-breaks-ground/103-5d49fb81-8f2e-4d8b-9c68-43efb0fe3cbc.[4]
And Plaintiffs allege in their Complaint that as of January 2,
2025, "contractors had already installed silt fencing around the
perimeter of the proposed casino construction site" and that as
of March 14, 2025, "contractors were continuing their
earthmoving activities at the site." Compl., ECF No. 1 ¶¶ 138,

---

[4] The Court can take judicial notice of facts generally known
as a result of newspaper articles. *See Washington Post v.
Robinson,* 935 F.2d 282, 291 (D.C. Cir. 1991).

139. Plaintiffs filed the Complaint on April 14, 2025, but did
not file their Motion for Preliminary Injunction until September
15, 2025. *See* Compl., ECF No. 1; MPI, ECF No. 17. The apparent
reason for moving for preliminary injunctive relief was that the
rapid pace of construction meant the casino would open in Spring
2026. MPI, ECF No. 17 at 2. The opening date has since moved to
February 2026. Reply, ECF No. 44 at 44 n.14. In view of this
timeline, Plaintiffs' delay in seeking injunctive relief
undercuts their claim of irreparable harm.

In sum, Plaintiffs are unlikely to show that deprivation of
their constitutional rights is likely. Furthermore, Plaintiffs
claims of injury are entirely speculative. Finally, Plaintiffs'
delay in seeking injunctive relief supports the Court's
conclusion that Plaintiffs have failed to demonstrate
irreparable injury. For all these reasons, Plaintiffs have
failed to satisfy this Circuit's "high standard for irreparable
injury." *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297.

### B. Plaintiffs Are Unlikely to Prevail on the Merits of Their Claims

"A movant's failure to show any irreparable harm is [ ]
grounds for refusing to issue a preliminary injunction, even if
the other three factors entering the calculus merit such
relief." *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297
(quoting *Sampson*, 415 U.S. at 88). Nonetheless, the Court will

consider whether Plaintiffs are likely to succeed on the merits of their claims.

### 1. Standard for Likelihood of Success Is Unchanged

As an initial matter, the Court rejects Plaintiffs' argument regarding the legal standard for likelihood of success on the merits. Plaintiffs argue in their Reply that, based on *Trump v. CASA, Inc.,* 606 U.S. 831, 860 (2025), the "likelihood of success factor focuses on whether the movant 'is likely to prevail on the merits of the issue before [the court], not [on] whether he is likely to prevail on the merits of the underlying suit.'" Reply, ECF No. 44 at 14 (quoting *Trump v. CASA,* 606 U.S. at 860).

However, Defendants are correct that this misunderstands the impact of the *Trump v. CASA* decision. Sur-Reply, ECF No. 47 at 8. The full text of the quoted language Defendants cite discusses the standard the Court uses in deciding applications for a stay. *CASA*, 606 U.S. at 860. Furthermore, the issue before the Court in *Trump v. CASA* was not whether the injunction was proper based on the likelihood of success of the underlying claim, but rather, the scope of the injunction issued, and whether the entry of a universal injunction exceeded the authority of a federal court. *Id.* The Court considered, and found that, the government was "likely to succeed on the merits of its argument regarding the scope of relief." *Id.* at 841. The

21

holding did not disturb the standard for evaluating whether a
preliminary injunction should be granted.

>    **2.    Plaintiffs' Claims Against the Government
>         Defendants Under 1981, Section 1983, and Section
>         1985 Are Barred by Sovereign Immunity**

Plaintiffs argue that the Defendants' ongoing recognition
of the twelve parcels at issue and continuation of what
Plaintiffs claim is a "fraudulent Federal-Indian trust
relationship" qualifies as an "ongoing federal conspiracy to
deprive Plaintiffs and other similarly situated California
citizens of their liberty interests and constitutionally
protected rights in violation of 42 U.S. §§ 1981, § 1983, and
§ 1985." MPI, ECF No. 17-1 at 26. Defendants argue that the
Court lacks subject matter jurisdiction over any claims
Plaintiffs bring against Defendants under Section 1981, Section
1983, or Section 1985 because these claims are barred by
Sovereign Immunity. Opp'n, ECF No. 32 at 15.

As an initial matter, "Section 1983 does not apply to
federal officials acting under color of federal law," and
therefore that statute is not the proper vehicle for Plaintiffs
to bring claims against the Defendants. *Settles v. U.S. Parole
Comm'n*, 429 F.3d 1098, 1104 (D.C. Cir. 2005). Moreover, with
respect to Sovereign Immunity, the government is correct that
the "[c]laims against the individual defendants in their
official capacities should be treated as if they were brought

22

against the United States directly." Opp'n, ECF No. 32 at 15 (citing *Gonzalez v. Holder*, 763 F. Supp. 2d 145, 148 (D.D.C. 2011) (quoting *Kentucky v. Graham,* 473 U.S. 159, 165–66 (1985)("an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"))). The "United States may not be sued without its consent and [] the existence of such consent is a prerequisite for jurisdiction." *U.S. v. Mitchell*, 463 U.S. 206, 212 (1983). A waiver of sovereign immunity "must be unequivocally expressed in statutory text" and strictly construed "in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192 (1996).

Neither Section 1981, Section 1983, nor Section 1985 contain such an explicit waiver of immunity. *See Jean-Baptiste v. U.S. Dep't of Just.,* No. 23-432, 2024 WL 1253858, at *4 (D.D.C. Mar. 25, 2024) (stating that nothing in the text of these three statutes "suggests the United States has waived its immunity to suit" and noting that "courts have expressly held the opposite"); *Roum v. Bush*, 461 F. Supp. 2d 40, 46 (D.D.C. 2006) ("[Section] 1985 does not waive the federal government's sovereign immunity, so federal employees acting in their official capacities are immune from liability for alleged violations of § 1985"); *Ali v. U.S. Parole Comm'n,* No. 06-0235, 2007 WL 902312, at *2 (D.D.C. Mar. 23, 2007) (finding sovereign immunity barred § 1983 claims against federal government

defendants sued in official capacities); *Zhu v. Gonzales,* No. 04-1408, 2006 WL 1274767 (D.D.C. May 8, 2006) (quoting *Hohri v. U.S.,* 782 F.2d 227, 245 n.43 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987) (stating that civil rights statutes, including Section 1981, "by their terms, do not apply to actions against the United States")).

Plaintiffs argue in their Reply that they "may" secure injunctive and declaratory relief against Defendants in their official capacities. Reply, ECF No. 44 at 51. Plaintiffs cite case law discussing *Ex Parte Young* to show that suits against government officials sued in their official capacities "are not immune" from being enjoined. *Id.* at 52 (citing *Vann v. U.S. DOI,* 701 F.3d 927, 928 (D.C. Cir. 2012); *Mich. v. Bay Mills Indian Cmty.*, 572 U.S. 782, 796 (2014); *Ex parte Young,* 209 U.S. 123 (1908)). However, like Section 1983, the *Ex Parte Young* doctrine allows for suits against *state* officials acting in violation of federal law, not federal officials, and thus does not apply here. *Ex parte Young,* 209 U.S. at 159 ("It is simply an illegal act upon the part of a state official in attempting, by the use of the name of the state, to enforce a legislative enactment which is void because unconstitutional.").

Accordingly, the Court lacks subject matter jurisdiction over Plaintiffs' Section 1981, Section 1983, and Section 1985 claims.

3.    **Plaintiffs' Remaining Claims Are Barred by the Statute of Limitations[5]**

Plaintiffs seek preliminary injunctive relief

> to stop the ongoing violation of Plaintiffs'
> Fourteenth Amendment equal protection and due
> process rights and their foundational liberty
> (freedom) interests resulting directly from
> the       Federal       and       Individual
> Defendants'("FID")s' actions to extend Indian
> tribal recognition, promote solely Indian
> interests in taking 12 parcels of land into
> "trust" and in obtaining approval for Indian
> gaming on those parcels. All of these
> continuing actions are completely race based
> from the assumed Indian trust relationship.
> These actions are continuing constitutional
> violations, of the Property/Territory Clause,
> the Fifth, Tenth and Thirteenth Amendments,
> and separation of powers and federalism
> principles. The FIDs continue to violate these
> structural protections by continuing to
> reaffirm the federal government's prior
> exercise of extra-/pre-constitutional
> territorial war powers pursuant to 25 U.S.C.
> §§ 71 and 177, 43 U.S.C §§ 1457 and 1458, and
> 18 U.S.C. § 1151, based on a nonexistent
> common law fiduciary Federal-Indian "trust"
> relationship with the Ione Band of Miwok
> Indians. The FIDs employed these powers on the
> Ione Band's behalf, in contravention of the

---

[5] The Court assumes without deciding that Plaintiffs may bring claims under the Thirteenth and Fourteenth Amendments and that the organizational Plaintiff has standing. *See In re Grand Jury Subpoena (Judith Miller)*, 438 F.3d 1141, 1159 (D.C. Cir. 2006)(Henderson, J., concurring)("In our circuit it is a venerable practice, and one frequently observed, to assume arguendo the answer to one question . . . in order to resolve a given case by answering another and equally dispositive one . . ."). Because the Court determines that Plaintiffs are barred from bringing their claims on sovereign immunity and statute of limitations grounds, the Court does not reach whether Plaintiffs' claims are precluded; whether Plaintiffs allege any violation of the Tenth Amendment, the Property Clause, or the Fifth Amendment; or whether Plaintiffs allege any Ultra Vires claim.

> Federally Recognized Tribe List Act ("List
> Act"), the Indian Reorganization Act ("IRA"),
> Indian Land Consolidation Act ("ILCA"), and
> Indian Gaming Regulatory Act ("IGRA") to
> ensure the 12 third-party-owned Amador County
> California fee simple land parcels located
> within one mile of Plaintiffs' residences were
> accepted into "trust" status. This created
> land status based upon the Indian trust
> relationship.

Reply, ECF No. 44 at 15. Plaintiffs also seek "*Ultra Vires*
Review of the President's Ongoing Reaffirmation of the Nixon
Indian Policy Extending the 1871 Indian Policy Which the FIDs
Continue to Employ to Violate the Constitution's Structural
Protections and Plaintiffs' Individual Constitutional Rights and
Liberty Interests." *Id.* at 49-51.

All of Plaintiffs' claims are subject to a six-year statute
of limitations. *See* 28 U.S.C. § 2401(a)("every civil action
commenced against the United States shall be barred unless the
complaint is filed within six years after the right of action
first accrues."). A claim subject to this statute of limitations
accrues when "the injured party discovers—or in the exercise of
due diligence should have discovered—that it has been injured."
*Sprint Commc'ns Co., v. FCC,* 76 F.3d 1221, 1228 (D.C. Cir.
1996); *see also Adams, Nash & Haskell, Inc. v. U.S.,* No. 20-
1916, 2021 WL 1340918, at *3 (D.D.C. Apr. 9, 2021) (quoting
*Connors v. Hallmark & Son Coal Co.,* 935 F.2d 336, 342 (D.C. Cir.
1991)) ("'the discovery rule is the general accrual rule in

federal courts' applicable to federal questions 'in the absence of contrary directive from Congress'").

Defendants argue that Plaintiffs' claims are time-barred because they challenge the May 24, 2012 Decision. Opp'n, ECF No. 18. Plaintiffs do not dispute that the six-year statute of limitations applies, arguing rather that the continuing violation doctrine applies to their claims because the Defendants' "continuing reaffirmation of the acceptances into federal trust of the 12 Amador County land parcels began in March 20[20] and continued through October 2024, and continues to the present day, resulting in ongoing violations of the Constitutions' structural protections and Plaintiffs' individual constitutionally protected rights and liberty interests." Reply, ECF No. 44 at 62. Accordingly, Plaintiffs argue, "the ordinary three or six year statute of limitations for constitutional torts in the District of Columbia is tolled indefinitely until the constitutional and statutory violations cease." *Id.*

The continuing violation doctrine is an exception to the general rule that "[a] claim normally accrues when the factual and legal prerequisites for filing suit are in place." *Earle v. Dist. of Columbia,* 707 F.3d 299, 306 (D.C. Cir. 2012) (quoting *Norwest Bank Minnesota Nat'l Ass'n v. FDIC*, 312 F.3d 447, 451 (D.C. Cir. 2002)(internal quotations omitted)). Although "[t]his doctrine is 'muddled,'" the D.C. Circuit recognizes at least two

27

applications: (1) where the "character [of the challenged
conduct] as a violation did not become clear until it was
repeated during the limitations period, typically because it is
only its cumulative impact ... that reveals its illegality"; and
(2) where "the text of the pertinent law imposes a continuing
obligation to act or refrain from acting." *Id.* at 306-07
(citations omitted).

Neither of these conditions are met here. Plaintiffs do not
argue that the illegality of Defendants' conduct only became
apparent through repeated actions, nor do they dispute that the
May 24, 2012 Decision injured them. Reply, ECF No. 44 at 62. Nor
do Plaintiffs argue that the text of the pertinent law imposes a
"continuing obligation to act or refrain from acting," *Earle,*
707 F.3d at 307; but instead generally state that the government
reaffirming the original acceptances into federal trust resulted
in "ongoing violations of the Constitutions' structural
protections and Plaintiffs' individual constitutionally
protected rights and liberty interests." Reply, ECF No. 44 at
62.

When Interior announced its May 24, 2012 Decision, upon
that action by Interior, Plaintiffs' claims became "immediately
actionable." *Earle,* 707 F.3d at 307. This is clear from the fact
that other litigants, including three of the Plaintiffs in this
case, challenged the Decision at the time. *See County of Amador,*

28

*California*, 136 F. Supp. 3d 1193; *Plymouth I*, 2022 WL 148949.
The subsequent reaffirmations thus "did not accumulate to
comprise a single, actionable violation." *Earle,* 707 F.3d at
307.

Plaintiffs do not cite to, nor is the Court aware of,
binding case law addressing whether reaffirmations of trust
decisions are considered continuing violations of the
Constitution. At least one court has found that a challenge to
an entrustment decision by the BIA was time barred under six-
year statute of limitations despite subsequent actions taken by
BIA pursuant to that entrustment. *Big Lagoon Rancheria v.
California,* 789 F.3d 947, 954 (9th Cir. 2015)(considering
challenge to BIA decision to hold parcel of land in trust for
Indian tribe and finding six-year limitations period applied).

In other contexts, courts have held that "to restart the
statute of limitations, an overt act [(1)] must be a new and
independent act that is not merely a reaffirmation of a previous
act, and (2) it must inflict new and accumulating injury on the
plaintiff." *In re Mission Health Antitrust Litig.,* No. 1:22-CV-
00114-MR, 2024 WL 759308, at *7 (W.D.N.C. Feb. 21, 2024)
(citations and internal quotation marks omitted). As explained
above, there is no such "overt act" here.

In the 2012 ROD, Interior "announced its intention to take
land into trust for the benefit of the Ione Band" and Interior

"allowed the Ione Band to build a casino complex and conduct gaming on the land once it is taken into trust." *County of Amador*, 872 F.3d at 1015. This occurred in March 2020 and October 2024 when the twelve parcels of land were accepted into federal trust. Therefore, claims arising from the May 24, 2012 ROD are barred by the six year statute of limitations, which expired before Plaintiffs filed this suit in 2025. *See generally* Compl., ECF No. 1.

For all these reasons, the Court concludes that Plaintiffs have not shown a substantial likelihood of success on the merits of any of their claims.

### C. Balance of the Equities and the Public Interest

In view of the Court's conclusion that Plaintiffs have failed to demonstrate irreparable harm, and that they have no likelihood of succeeding on the merits, the Court need not consider the final factors, but will briefly discuss them.

"A party seeking a preliminary injunction must show that 'the balance of equities favors preliminary relief' and that 'an injunction is in the public interest.'" *Hanson*, 120 F.4th at 246 (quoting *Singh v. Berger*, 56 F.4th 88, 95 (D.C. Cir. 2022)). The Court "must carefully balance the equities by weighing the harm to the moving party and the public if there is no injunction against the harm to the government and the public if there is." *Id.* The balance of the equities and the public interest "merge

when the Government is the opposing party." *Nken*, 556 U.S. at 435.

Here, the only harm to the moving party and the public if there is no injunction is the status quo. And the status quo is as it is partially as the result of two challenges in federal court to the Interior ROD in 2012 that lead to the construction of the casino. These challenges were fully litigated, in each case the government prevailed, and in each case the Supreme Court denied the petitions for the writ of certiorari. The litigation history here assures the Court that not providing preliminary injunctive relief will not harm the moving party nor the public. Indeed, the Court has already determined that the Plaintiffs failed to demonstrate irreparable harm.

### D.    Injunctive Relief Is Not Available Against Federal Officials in their Individual Capacities

Plaintiffs also seek injunctive relief from Defendants sued in their individual capacities. *See generally* MPI, ECF No. 17. However, such relief is not available against a government defendant sued in their individual capacity. *Dugan v. Rank,* 372 U.S. 609, 620 (1963)(finding that "if the effect of the judgment would be to restrain the Government from acting, or to compel it to act" the suit is brought against the sovereign)(citations and internal quotation marks omitted); *Hatfill v. Gonzales,* 519 F. Supp. 2d 13, 26 (D.D.C. 2007) (holding that injunctive relief

31

"can only be provided by the government through government employees acting in their official capacities because deprivation of a constitutional right can only be remedied by the government"). The D.C. Circuit has not addressed this issue specifically, but other courts in this District and elsewhere have maintained that "there is no basis for suing a government official for declaratory and injunctive relief in his or her individual or personal capacity." *Hatfill,* 519 F. Supp. 2d at 19; *see also Leyland v. Edwards,* 797 F. Supp. 2d 7, 12 (D.D.C. 2011) (denying injunctive relief sought against government official sued in individual capacity); *BEG Inv., LLC v. Alberti,* 34 F. Supp. 3d 68, 80 (D.D.C. 2014) (same); *Cayuga Nation v. Zinke,* 302 F. Supp. 3d 352, 359 (D.D.C. 2018) (same); *Feit v. Ward*, 886 F.2d 848, 858 (7th Cir. 1989).

Because "only by acting as a government official (not as an individual acting personally), can a public official's compliance with a court decree remedy the governmental action, policy or practice that is being challenged," Defendants sued here in their individual capacities cannot remedy the action Plaintiffs challenge. *Hatfill,* 519 F. Supp. 2d at 26.

## IV.  Conclusion

Preliminary injunctions are "an extraordinary and drastic remedy." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Wright & Miller, *Federal Practice & Procedure* § 2948 (2d ed. 1995)). "[C]ourts must [therefore] use great caution [and] grant[ ] them only in cases where they are clearly indispensable to the ends of justice." *Hanson*, 120 F.4th at 243 (quoting *Del. State Sportsmen's Ass'n, v. Del. Dep't of Safety & Homeland Sec.,* 108 F.4th 194, 199 (3d Cir. 2024)). Here, Plaintiffs have failed to show irreparable injury or that they are likely to succeed on the merits of their claims. Accordingly, Plaintiffs have not made the requisite showing for a preliminary injunction.

For the foregoing reasons, the Court **DENIES** Plaintiffs' Motion for Preliminary Injunction, ECF No. 17. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

Signed:    **Emmet G. Sullivan**
           **United States District Judge**
           **February 10, 2026**